We'll hear the first case on calendar, Pistolesi v. Calabrese. Thank you. May it please the Court, Michael Sussman, Sussman & Watkins, New York, representing Mr. Pistolesi et al. I assume that the Court has reviewed the facts of the case, and I'll try to focus on the three issues that I understand are in dispute. Briefly, Alto was thrown off the towing list by Police Commissioner Calabrese four months after Mr. Pistolesi complained about favoritism and nepotism in the village, and one week after he sent a letter to the village board discussing similar matters. Mr. Calabrese claimed that he acted based on a consumer complaint and not on retaliatory animus. However, in refuting this, the appellants faced significant evidentiary hurdles, which we believe were the result of erroneous district court rulings. The jury ruled against you, but this is basically an evidentiary challenge. These matters the jury didn't hear, Your Honor. That's why it's an evidentiary challenge. You're correct. So it's an abuse of discretion standard. And can I just get one thing straight? When a company is removed from the towing list, they remain in the towing business. They just don't get calls from the city police for people whose cars break down on the highway or something like that. You're correct. The village doesn't have the authority to say to someone they can't be engaged in towing. You're correct. So they can do state police towing. If someone calls them, they can do the tow. This relates to the rotational tow list maintained by the village. So you're absolutely correct. Doesn't most of the business come from the tow list? Yes, Your Honor. Okay. Go on. But let me try to address the evidentiary point, as Judge Jacobs pointed out, what we're arguing here. The two evidentiary issues are the following. First, there were two complaints, Your Honors, that were received, one in 2010, the next month, and one in 2012 by Mr. Calabresi about the other tow companies. One tow company is called Lee and the other was called Chester Garage. The argument simply stated is this. Mr. Calabresi treated those in a radically different manner, both with regard to his crediting the towing company rather than the complainant. His dismissive behavior, one woman claimed that the tow company called her father retarded, was extremely rude to her, had charged her for something that was never done whatsoever. The jury never heard that. Now, as you're obviously aware, in a retaliation case, one significant piece of evidence is whether the decision maker did disparately treat similarly situated people. Here, the other tow companies were plainly similarly situated in that they were regulated by the same authority and by the same individual. But you have to have, I think, some sympathy for a trial judge who seeks to avoid many trials about towing bills. I don't think so. I do have some sympathy, so let me start with that. I do have some sympathy, and I agree with your formulation. You should have some sympathy. I won't be argumentative. Some. But it's limited sympathy where the issues are rather discreet and simple. That is, there are two pieces of evidence. They're bills and they're notes. You're not going to have days of a mini trial about it because the questions are very simple. What's in those notes? What's in those bills? What were the allegations? And what did you do? I mean, frankly, as a trial lawyer, it would take me 15 minutes to assess that and deal with it in a courtroom. Not hours. If you would know what the allegations are, you wouldn't necessarily, nor could the jury necessarily, know the merits of the dispute between the person whose car was towed and the company that towed it. In fact, though, Your Honor, in this case, it would have come out that in both instances, there was not really even a dispute about the mispractice by the other towing companies. So in one instance, the towing company said they didn't do anything and they admitted not to doing anything  And in the other instance, they had agreed in advance, when the gentleman called, they said, okay, we'll reduce our bill. So in both instances, I think the jury was entitled to hear, I agree, the weight that the jury would have put to this. It's not clear. But it is clear to me that the second evidentiary matter is, I think, more serious. There you have the building inspector of the same village in a contemporaneous period of time talking with the gentleman whose behavior is essentially on trial, Mr. Calabrese. And Mr. Calabrese is saying he wants to run Mr. Pistolisti out of town. And he's talking about alleged violations of towing, which we only know of one, by the way. It was an animus. I'm sorry. In that case, Mr. Pistolisti did not offer to reduce his bill in the large bill that was the source of this. You're correct. He did not offer to reduce the bill and he justified the bill and said that it was standard practice. And the other thing to point out in regard to that is the town had no regulations with regard to rates, just so it's clear to the court. When Mr. Calabrese was calling, he wasn't enforcing regulations or rules that the town, the village had. So in other words, Mr. Fenton was prohibited from testifying, the building inspector. And the reason he was prohibited from testifying is unclear, because other village officials testified. They testified, in fact, in a conclusory manner that there was no retaliation. Mr. Vizentin was allowed to so testify and others. And yet Mr. Fenton, who had direct evidence, which I think would have plainly be admissible under 802 DA2, was not permitted to testify. And I think that clearly that level of animus that he was expressing would have been significant. Let me go to the second issue. The second issue is the equal protection matter with regard to the other tow company, which is Action. Action was throwing off the towing list by Mr. Calabrese based on Requirement 4, which was later found to be preempted by Federal law. Now, the regulation, just to be clear, or the requirement, states specifically that you cannot have two towing companies working out of the same building. That's the regulation. It is not a regulation which says you can't have two towing companies owned by the same concern. It doesn't say that. The district court interprets this and says, well, what happened is the motivation was it was owned by the same concern. However, that's not the regulation. And it's totally irrational to be enforcing a regulation which says you're in the same building, therefore you can't have two companies on the list. They could be two totally dissimilar companies and under their regulation it would have been prohibited, which makes no sense and does not further the interest of equity. So under OLEC, we believe there's a high level of irrationality in their actual provision they had. Now, the other part that's relevant here is that this very provision, as you know, was found to be impermissible. It was preempted by federal law, which is not challenged on appeal. So basically, this gentleman is being precluded from the operation of the towing based on a regulation which itself is invalid. I see my time is almost up. Let me quickly move to the third issue. Sorry, Judge. The third issue is the relief issue. Here, as I mentioned earlier, you have the preemption ruling. And based on the preemption ruling, it's determined that Aalto should not action, excuse me, should not have been banned from the list. That was the determination because, in fact, it was based on something which the village had no business to do, simply put. I thought Aalto was removed because of the overcharging. You're right. I corrected it. You're right. Action. We're talking about action. I'm sorry. So here we have now the question of what's to be done about it. And the district court judge says that we're asking for, and I wasn't the trial lawyer here, we're asking for retroactive relief. But I don't believe it is retroactive under the law. I believe it's prospective relief. The relief is not money damages for the time period he was thrown off the list. That's not what was sought. What was sought was an injunction moving forward putting him back on the list, which seems to me to be squarely within both the declaratory judgment authority. So what was in the injunction if your client can't get back on the list? Well, that's my point. It's meaningless. The only force and effect of the injunction is you can't enforce the provision anymore. But my client had standing. There was no doubt he had standing. What if your client applied? My client did apply, and they didn't do anything. So we'd have to file another lawsuit. And we're saying part of the remedy in this lawsuit was to enjoin them affirmatively, which is affirmative prospective relief, which is constitutionally permissible. I'm over time. I thank you for your tolerance. Let me ask one short question. Sorry, Your Honor. The statute in question doesn't appear to allow for a private remedy. The injunction that you seek is a private remedy. I understand that. But our position is that under the declaratory judgment authority of a court, equitable authority, which the court acknowledges having, the court doesn't say he doesn't have equitable authority. He does have equitable authority. Under either the All-Writs statute, the declaratory judgment statute, he can enter an order which rectifies the situation. He didn't say my client had no standing to bring the claim because there's no private right of action. He said based upon the preemption that's clearly affected by that statute, he does have standing. He grants the relief in the sense of it's improper, but then he won't remedy it. Thank you. Thank you, counsel. You reserved rebuttal. So we'll hear you then. May it please the Court. My name is Monty Eppinger, representing the legal interests in this case of the appellees. And with regard to the Fenton exclusion, I'll deal with that particular issue very first. What we have here is a situation where Mr. Fenton's exclusion really doesn't change the heart of the basis upon which the jury was allowed to view the evidence as a whole. There are a number of evidentiary elements that must be satisfied in order before one gets to the issue of whether or not there's been a First Amendment retaliation. One of those very important First Amendment elements is whether or not the particular communication was ever in fact related to the municipal authority. And if you have a situation where, sure, Mr. Fenton was excluded, but his evidentiary evidence under these circumstances, what he would have testified to, and what he would have said, by the way, is that he heard something that was said by Mr. Calabrese with regard to whether or not Mr. Pistolese should have been removed from the toll list. There was an available inference that when Mr. Pistolese complained that the town hadn't appreciated what he had done and therefore wasn't going to contribute anything further to voluntary things in the town, he immediately got an apology. And that, or he immediately got pats. So that indicates that something that he said the jury could conclude, that something that the plaintiff said was conveyed to the folks in the town. Okay. And that sounds like a circumstance. Otherwise it's uncanny. Uncanny circumstantial evidence. But what about whether or not the communication was ever related to the town in the first place? In other words, we have Mr. Fenton saying that specifically the information that he was in possession of was perhaps conveyed, but what happened was underlying that is an issue of whether or not the jury itself was convinced that the communication, the underlying communication, the protected speech, not what Mr. Fenton said, because Mr. Fenton's speech is not the protected speech. The protected speech is a statement with regard to nepotism and favoritism. And why was the jury not permitted then to view the testimony as a whole, including Mr. Pistolese's own testimony and his own memories, and then make a determination with regard to whether or not we believe that? And what the appellant is really arguing for is that we want to nullify now the jury's assessment of his own memory. And sure, there's this smoke and mirrors with regard to what he purportedly remembered, but that does not create then a basis for them to say, well, we have to then agree with that statement having been conveyed to the village. And if that was not done, then this issue with regard to Fenton's exclusion then becomes a red herring. It would not make a difference then, because if you don't have the communicated speech, whether or not Fenton said or would have said something else with regard to running Mr. Pistolese out of town, wouldn't it make a difference in that regard? Could you explain to me why the plaintiff wouldn't be entitled to have the injunction include that action should be restored to the towing list, which has like four rotational companies on it or something? Okay. We're talking now about with the action removal under these circumstances. That's right. Could you repeat that question one more time? Can you explain to me why the injunction would not grant relief for action to be restored to the list? The injunction that would allow him then to allow action to be restored? Yes. Under what circumstances? In the future. Okay. Yes, I can. I believe Judge Aspin's assessment was extremely detailed with regard, and he relied specifically on the Loyal Tire case. And what he saw was that there were private concerns here also. The ability of the let me just refer to my note for one second, because it was an extremely complicated analysis under those circumstances. And what I saw was that the judge was relying upon what authority is granted under Section 1983 and under equal protection in order to allow a municipality then to go ahead and reinstate. And I believe that those grounds of authority, as stated by Judge Aspin, did not include that body of special authority. It didn't give that much authority. And, in fact, if we take a look at the quote from the State itself, from the Second Circuit Court itself, where it addressed those particular issues, what it said was that Section 14501 does not create an individual right enforceable under Section 1983. But there is now an injunction, and it was based upon a ruling that you have not appealed. So I'm not sure why we want to go back to find out about the private right of action. It was brought. The plaintiff prevailed, got an injunction. The injunction doesn't seem to do anything for the plaintiff. Now, I grant you circumstances might change. It could be that the company is, you know, the corporation has been sold to somebody who should not be trusted to go out on the road and handle people's automobiles. I don't know. But, I mean, all things being equal, I don't understand why having prevailed in this action with or without a right, a private right of action, and that you're taking no appeal from it, why action wouldn't be directed to be restored or at least for them to consider on a neutral and fair basis whether action qualifies. Well, we're really talking here also about an injunctive relief. Yes. And I believe that the judge has an enormous, vast power with regard to enforcement of injunctive relief under those circumstances. And the judge take into consideration the proper overall picture could perhaps say, and as I believe there was some dicta in that regard, that there was nothing preventing action from then going ahead and making another application. And there was no reason why that couldn't possibly have been granted. And there was nothing to prevent them from doing so. But this judge didn't exercise that vast discretion. He just thought he didn't have the authority. He did say that. But I believe that if we had gone one step further, that discretion is within his authority because we are talking about injunctive relief here as well. So shouldn't we send it back to find out what he thinks? It's a possibility that could be done to elucidate perhaps what those grounds were. I'm not saying that it wouldn't be a possibility as well. As far as the final basis for challenge, as my opponent mentioned, we have here what was claimed to be an unequal enforcement of the regulations. But if you examine those regulations then and how those regulations were applied, there is, in fact, a real practical concern here. We have the board examining whether or not action could be removed. When you take a look, however, you see that Dutchess and Marty's and Action, they really didn't do a focused attention on action. What they did instead was they said, we're going to clean house right now. There wasn't some discriminatory basis for retaliation we're talking about here, whether or not there would be reason for why they should be. A lot of companies, we had Marty's, we had Action, and we had Dutchess also. They were all removed simultaneously. This isn't something that we are trying to now focus on for purposes of retaliation or otherwise to remove a particular entity under those circumstances. And that basically was our second set of arguments as well. Thank you. Thank you very much. Thank you, Your Rebuttal. Just three very brief points. Mr. Fenton's testimony was not about his protected speech, as I'm sure the Court understands. His testimony was about the response by Mr. Calabresi, not made once, but made as he testified in deposition, every time he spoke to Calabresi, of deprecating and hostile comments toward my client. That's what was prohibited from the jury hearing, which I believe is central, frankly, to refuting, as I explained it to the Court initially, the claim that there were other reasons which animated and justified the adverse action. So under Morris v. Lindau, that's where that comes in. With regard to this issue about the injunction in broad equitable authority and considerations, there's no aversion in dicta by the judge, respectfully, with regard to any of those considerations. The judge, it seems to me, clearly erred in understanding his own authority. I urge the Court not to send it back because, frankly, there's no reason to. There's nothing in the record which suggests anything about action, any actions by action or anything else which would in any way disqualify it from. Sotomayor, is actions subsequent application to be added to the towing list? Is that in the record? Yes, because when and the application was never acted. There was no action on it. I know we're talking about action a lot. Nothing happened. I had thought it was denied. It was just. Well, we say denied because it wasn't granted, so if it's not granted, it's constructively denied. Right. In other words, you're not on the list. Yeah, he's not on the list. And there's no reason adduced for that which relates to any factor that might give rise to suspicion or concern about it. The third point briefly. Well, you won't be satisfied if they act tomorrow and just say no. Nope. Well, there's no reason to say no in light of the preemption issue. That's what I've tried to explain. The preemption issue was the predicate for them being removed from the list, and it was the only predicate. That preemption issue is gone. In other words, the preemption has taken that regulation out of the picture, and without it, there's no other reason to preclude them from being on the list. And you're saying without it, there's no other reason to preclude them from being on the list, but we don't know whether there may or may not be some other reason. There wasn't a reason. There wasn't another reason that was cited back then when the events happened, but how do we know today who owns it? The reapplication, respectfully, Judge, was made after the declaration that preemption was no longer a factor. So at that point, it was an opportunity for them to adduce any reason they might have. Preemption was already gone by then. It's not that they were at that point when the second application came in relying on the preempted provision. It was already gone, and they still adduced no reason. They didn't refer to the bill again at that point? No, absolutely not. Thank you for your time. Okay. Thank you both. We'll reserve decision.